MAY, AS TRUSTEE IN BANKRUPTCY OF GEO. W. COWEN CO., INC., BANKRUPT, *v.* HENDERSON, ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 126. Argued March 5, 1925.—Decided April 13, 1925.

Within four months prior to the filing of the petition in bankruptcy against it, the bankrupt made a general assignment for the benefit of creditors to two trustees, one of whom, H., was the president of a bank to which the assignor was then indebted on a promissory note, and with which it carried a deposit account. The account was transferred, after the assignment, to the names of the trustees, as such, and afterwards augmented by deposits of money collected by them in carrying on the assignor's business. Partly before the date of the bankruptcy petition and partly thereafter, H., having control of the account, caused it to be applied to the note, with the tacit consent of the other assignee. The bank, as well as the assignees, had executed the creditors' agreement under which the assignment was made, providing for a *pro rata* distribution among all creditors and expressly extending the time of payment of all indebtedness of the assignor for the period of one year. *Held*, that the assignees were properly directed by the Bankruptcy Court, in a summary proceeding, to pay over to the trustee in bankruptcy an amount equal to the deposits, including the part paid the bank before the filing of the petition as well as the part paid thereafter. P. 115.

289 Fed. 192, reversed.

CERTIORARI to a judgment of the Circuit Court of Appeals, on petition to revise, reversing a judgment entered

by the District Court summarily in a bankruptcy proceeding, which required the present respondents to pay over a sum of money to the trustee in bankruptcy.

Mr. *H. A. Jacobs*, with whom Messrs. *Henry G. W. Dinkelspiel, G. B. Blanckenburg* and *Martin J. Dinkelspiel* were on the briefs, for petitioner.

Mr. *A. A. DeLigne*, with whom Mr. *Archibald M. Johnson* was on the brief, for respondents.

MR. JUSTICE STONE delivered the opinion of the Court.

This is a writ of certiorari to the Circuit Court of Appeals for the Ninth Circuit to review its action (reported 289 Fed. 192) on a petition to revise an order of the District Court confirming the order of a referee in bankruptcy, summarily directing the respondents to pay over a sum of money to the trustee in bankruptcy.

On September 15, 1920, prior to but within four months of the filing of the petition, the bankrupt made to respondents, Henderson and Scannell, a general assignment for the benefit of creditors. At the time of the assignment the assignor was indebted on a promissory note in the sum of $15,000 to the Fort Sutter National Bank, of which respondent Henderson was president, and in which the assignor carried a deposit account. The referee found, on sufficient evidence, that the respondents accepted the trust under the assignment to them and continued the business of the assignor until the appointment of the receiver in bankruptcy on November 4, 1920, the petition in bankruptcy having been filed on October 9, 1920. In the meantime, the deposit account of the assignor with the bank, with the knowledge and assent of the assignees, was changed from the name of the assignor to the names of the assignees, as " trustees," and further deposits were from time to time made by them to the

credit of the account, in the course of their management of the business of the assignor. The assignor was duly adjudicated a bankrupt and, thereafter, the trustee in bankruptcy petitioned the Bankruptcy Court for an order directing the respondents, as assignees, to account for and pay over all moneys received by them from the date of the assignment to the date of the appointment of the receiver. Proceedings on the petition resulted in the order of the District Court directing respondents to pay over to the trustee an amount which would have stood to the credit of the assignees in their deposit account with the bank had the account not been closed in the following manner:

On September 30, 1920, ten days before the filing of the petition, the deposit account of the assignees with the bank was debited with the sum of $4,516.43, which amount was credited on the note of the bankrupt held by the bank, and on October 13, 1920, subsequent to the filing of the petition, and on various dates thereafter to and including October 25, 1920, further debits were made in the account which were credited on the note. These credits, including the first mentioned, amounted to the sum of $12,883.81, which was the amount directed to be paid over by respondents by order of the District Court. These debits and credits were made by direction of the respondent, Henderson, who throughout the period in question acted as one of the assignees and was also president of the bank. Although there was no explicit finding on the subject, the debits appear to have been made with the tacit assent of Scannell, the other assignee, who in any event appears to have left the management of the financial operations of the assignees to Henderson and made no objection or protest with respect to this use of the account standing to his credit as an assignee. We think that the finding of the Circuit Court of Ap-

peals that this application of the bank deposit on the note of the bankrupt constituted a "partial payment of the note as fully as if the assignees had given their check or withdrawn the money from the bank and paid it over the counter" is correct, and that both the assignees must be held legally responsible for this result. Where one of two co-trustees assents to a breach of trust by the other without objection, he is legally chargeable with liability for the breach. *Bermingham* v. *Wilcox*, 120 Cal. 467, 472; *Adair* v. *Brimmer*, 74 N. Y. 539; *Matter of Niles*, 113 N. Y. 547; *Hill* v. *Hill*, 79 N. J. Eq. 521.

The referee found that respondent Henderson was at all times from September 24, 1920, until the appointment of the receiver in bankruptcy, in control of the assignees' deposit account; and that he was the only officer of the bank who at any time exercised any control over the account, and that as president of the bank he at all times until the filing of the referee's report, had personal control of the funds deposited in the account; that the original ledger sheet of the bank showing the account standing in the names of the respondents as assignees, was destroyed by officials of the bank some time after the filing of the petition in bankruptcy and then an attempt was made to restore this account to the name of the bankrupt by rewriting the ledger sheets. He also found that on and after September 24, 1920, both the respondents and the Fort Sutter National Bank, which with respondents had on that date executed the creditors' agreement under which the assignment to respondents for the benefit of creditors was made, had actual knowledge of the insolvent condition of the bankrupt.

On the petition to revise, the Circuit Court of Appeals held that, when the money on deposit with the bank was applied on the note of the bankrupt, "the money passed into the possession and under the control of the bank and out of the possession and beyond the control of the re-

spondents . .; that the funds in the bank are not the funds of the president nor are they subject to his order and control, and an order directing him to pay over the money is not an order against the bank and is not binding upon the bank." The court accordingly held that the bank, which was not a party to this proceeding, held the funds received by it in its own right adversely to any claim of the assignees or the trustee in bankruptcy and could not be reached by a summary proceeding and it reversed the judgment and order of the District Court.

It is well settled that property or money held adversely to the bankrupt can only be recovered in a plenary suit and not by a summary proceeding in a Bankruptcy Court. *Louisville Trust Co. v. Comingor,* 184 U. S. 18; *First National Bank of Chicago* v. *Chicago Title & Trust Co.,* 198 U. S. 280; *Gailbraith* v. *Vallely,* 256 U. S. 46. But property held or acquired by others for account of the bankrupt is subject to a summary order of the court, which may direct an accounting and a payment over to the trustee or receiver appointed by the Bankruptcy Court. *White* v. *Schloerb,* 178 U. S. 542; *Mueller v. Nugent,* 184 U. S. 1; *Babbitt v. Dutcher,* 216 U. S. 102; *Chicago Board of Trade* v. *Johnson,* 264 U. S. 1. Such is the rule with respect to assignees for the benefit of creditors within four months of filing of the petition. *In re Stewart,* 179 Fed. 222; *In re Rathman,* 183 Fed. 913; *In re Neuburger, Inc.,* 240 Fed. 947; *In re Diamond's Estate,* 259 Fed. 70, 74, and see *Bryan* v. *Bernheimer,* 181 U. S. 188. See *Louisville Trust Co.* v. *Comingor* and *Gailbraith* v. *Vallely, supra,* where, however, the jurisdiction was defeated by the adverse claim of the assignee arising before the filing of the petition; and see *Randolph* v. *Scruggs,* 190 U. S. 533, as to the nature of the t' of the assignee for the benefit of creditors when bankruptcy ensues. See also *Taubel, etc. Co.* v. *Fox,* 264 U. S. 426, 433 and note. Courts of Bankruptcy do not permit themselves to be

ousted of jurisdiction by the mere assertion of an adverse claim. The court has jurisdiction to inquire into the claim for the purpose of ascertaining whether the summary remedy is an appropriate one within the principles of decision here stated. *Mueller* v. *Nugent, supra; Schweer* v. *Brown,* 130 Fed. 328, 195, U. S. 171; *Hebert* v. *Crawford,* 228 U. S. 204; *In re Ellis Bros. Printing Co.,* 156 Fed. 430. It may disregard the assertion that the claim is adverse if on the undisputed facts it appears to be merely colorable. *In re Weinger, Bergman & Co.,* 126 Fed. 875; *In re Rudnick & Co.,* 158 Fed. 223; *In re Ransford,* 194 Fed. 658; *Michaelis* v. *Lindeman,* 196 Fed. 718.

The petition upon which this proceeding was intitiated was in the usual form and prayed that the respondents be required to account for all moneys and properties coming into their hands as assignees or trustees under the assignment for the benefit of creditors. Such was their duty. Having assumed to take possession of the property of the bankrupt for its account, it was their legal duty to turn the property or its proceeds over to the trustee in bankruptcy or to account for their inability to do so by showing either a disposition of it in performance of a legal duty assumed toward the bankrupt or the bankrupt's trustee or by clothing themselves with the protection of a claim adverse to the bankrupt which was not merely colorable. As found by the Court, respondents came into the possession of moneys of the bankrupt which were by them placed on deposit to their credit as trustees or assignees for the benefit of creditors. The result of this transaction was that neither the bank nor the assignees held any specific money for account of the bankrupt and its creditors. They were creditors of the bank and the bank was their debtor. *Marine Bank* v. *Fulton Bank,* 2 Wall. 252; *Phoenix Bank* v. *Risley,* 111 U. S. 125. We are not therefore dealing with money in the possession

of the assignees or the bank in any literal sense, but the credit as a mere chose in action was held by the assignees for account of the bankrupt and they were bound to account for its proper disposition as for any other property coming into their hands.

The several amounts debited to the account, with the assent or connivance of the assignee subsequent to the filing of the petition, fall clearly within the rule that, as to property in the hands of the bankrupt or held by others for his account, " The filing of the petition is a caveat to all the world and in fact an attachment and an injunction." *Mueller* v. *Nugent, supra;* *Lazarus* v. *Prentice,* 234 U. S. 263; *Knapp & Spencer Co.* v. *Drew,* 160 Fed. 413; *In re Denson,* 195 Fed. 854; *In re Leigh,* 208 Fed. 486; *Gunther* v. *Home Ins. Co. et al.,* 276 Fed. 575; *Matter of R. & W. Skirt Co. et al.,* 222 Fed. 256; *Reed* v. *Barnett Nat. Bank,* 250 Fed. 983; and see *Acme Harvester Co.* v. *Beekman Lum. Co.,* 222 U. S. 300. See *Babbitt* v. *Dutcher,* 216 U. S. 102. In consequence, any person acquiring an interest in property of the bankrupt or his assignees for the benefit of creditors, adverse to the creditors, after the filing of a petition with notice of it, may be directed to surrender the property thus acquired by summary order of the Bankruptcy Court. *In re Denson, supra; In re Rudnick, supra;* and see *White* v. *Schloerb, supra.*

The rule is the same when a creditor secures payment of his debt from the bankrupt's estate after the filing of the petition. A summary order may be made directing repayment of the money to the trustee in bankruptcy. *Knapp & Spencer Co.* v. *Drew; In re Leigh; Matter of R. & W. Skirt Co., supra; In re Columbia Shoe Co.,* 289 Fed. 465. A like rule has been applied where a bank secures payment of its debt by setting up its lien or right of counterclaim against a deposit account of the bankrupt or the bankrupt's assignee, created subsequent to the filing

of the petition. *Michaelis* v. *Lindeman*, 196 Fed. 718; *Reed* v. *Barnett Nat. Bk., supra.* See *Farmers & Mechanics Bank* v. *Wilkinson, Trustee*, 266 U. S. 503. Any other rule would leave the Bankruptcy Court powerless to deal in an effective way with those holding property for the bankrupt who, pending the bankruptcy proceedings, wilfully dispose of it by placing it beyond the reach of the court. *Bryan* v. *Bernheimer*, 181 U. S. 188, 196.

We do not think, however, that respondents stand in any better position with respect to the first debit of $4,516.43 which was made a few days before the filing of the petition. The creditor's agreement, under which respondents were appointed assignees, and which was signed by them and by the Sutter National Bank, provided for only a pro rata distribution among creditors and expressly extended the time of payment of all indebtedness of the bankrupt for one year from the date of the creditors' agreement, which was dated September 15, 1920. The findings of the referee and the supporting evidence leave no doubt that Henderson, who with the assent of the co-assignee, Scannell, was in active control of the account both as an assignee for the benefit of creditors and for the bank as its president, directed this and all later debits to be made in the account, in fraud of the rights of creditors whom he assumed to represent.

There cannot, we think, be any pretense that the bank could assert a lien or counterclaim before the filing of the petition, in the face of its extension of its note by the creditors' agreement (*Fifth National Bank* v. *Lyttle*, 250 Fed. 361; *Heyman* v. *Third National Bank*, 216 Fed. 685), or at any time, in view of its transfer of the account to trustees for the benefit of creditors under the agreement signed by it. *Fitzgerald* v. *Bank*, 64 Minn. 469; *Lynman* v. *Bank*, 98 Me. 448. The findings of the referee and the evidence leave no doubt that the surrender or abandonment of their bank account to the bank by the assignees

and its attempted application by the bank to the payment of its note was collusive and without any substantial basis of legal right. At most it was a clumsy, ineffectual and fraudulent effort to divert the funds of the bankrupt to the payment of a favored creditor. While it is now settled that the claim of an assignee for the benefit of creditors, of the right to charge in his account expenses incurred or expenditures made prior to the filing of the petition in bankruptcy, is an adverse claim which cannot be adjudicated in a summary proceeding (*Louisville Trust Co.* v. *Comingor,* 184 U. S. 18; *Galbraith* v. *Vallely,* 256 U. S. 46), we think the rule cannot be extended to a case such as this where the claim is merely colorable and on its face made in bad faith and without any legal justification.

Nor is it any answer to such a proceeding that the diverted assets are no longer under the control of the assignees. They do not discharge the duty to account by showing that they assented to a cancellation of their bank account as assignees, and its application on an indebtedness of the bankrupt to the bank. The duty of a fiduciary to account for property entrusted to his care is fulfilled by delivery of the property, but if he has put it out of his power to deliver it, he may nevertheless be compelled to account for its worth. *United States* v. *Dunn et al., post,* p. 121. He is subject to the summary order of the Bankruptcy Court to restore the property to the bankrupt's estate. If he has sold it or mingled it with his own, he may be compelled by summary order to restore the value of the property thus wrongfully diverted. *In re Denson, supra,* and see *Bryan* v. *Bernheimer, supra,* at p. 197.

For that reason it is not necessary for us to enquire into the legal consequences which flow from the findings of the referee tending to show that the bank account was at all times under the control of Henderson, acting in

the dual capacity of assignee of the debtor and president of the creditor bank, or to ascertain whether such a situation falls within the rule that one acting in one capacity, subject to a summary order of the court, may not relieve himself from the duty to pay over money on a summary order by setting up that, although the money is still under his control, he holds it in a different capacity. See *Smith* v. *Longbottom & Son,* 142 Fed. 291. We rest our decision rather on the duty of assignees, for the benefit of creditors, to account in a summary proceeding for the property which they have received within four months of the bankruptcy and to make restitution of the value of the property of the bankrupt which they have dissipated without a colorable claim of right.

On the argument, respondents relied upon numerous cases in the District Courts and Circuit Courts of Appeals to the effect that the court will not in a summary proceeding make an order requiring a bankrupt to pay over money to his trustee unless the bankrupt's ability to comply therewith is plainly and affirmatively shown. *American Trust Co.* v. *Wallis,* 126 Fed. 464; *In re Berman,* 165 Fed. 383; *In re Sax,* 141 Fed. 223; *In re Goldfarb Brothers,* 131 Fed. 643; *Epstein* v. *Steinfeld,* 210 Fed. 236; *In re Nisenson,* 182 Fed. 912; *In re Stern,* 215 Fed. 979. But we think that a bankrupt who is shown to have turned over generally his assets and property to the receiver or the trustee in bankruptcy, is in a different situation from one not a bankrupt who is under a duty to account in a summary proceeding. A court of bankruptcy should not make useless orders. If the bankrupt has turned over his property generally to the Bankruptcy Court and is not shown to possess or control the specific property which is the subject of summary order, there may be a presumption that any order will be groundless. No such presumption obtains with respect to respondents. They have not shown that they are insolvent or in other

respects are unable to comply with the order of the District Court.

The judgment of the District Court was proper. The judgment of the Circuit Court of Appeals is

*Reversed.*